If it pleases the court, my name is William Qiang, representing the petitioner. Your Honor, this is an alarm application case. It was denied by the court, mainly on the credibility issue. The respondent was found not credible based on basically one issue. He forgot he had a few days trip to his hometown to visit his grandparents. It's a little more than that because the emails portray a different tone. He's talking to his fiancée that he was claiming for the same time period in his prior test. Isn't that one of the things the IJ relied on? That's right, Your Honor. But the petitioner qualified his email because he did not want to write about his police arrest, detention, etc., not to scare his fiancée in China. In China, police sanction emails, so it's not convenient for him to disclose those things in the email. He already told the judge twice that this is the purpose. He wrote the email skipping and not mentioning about the police arrest. Counsel, if I were the IJ listening to Mr. Zhang and I believed him, I might find those a credible explanation. But the IJ says I listened to him, I heard him, I observed his demeanor, and I didn't believe that that explanation was accurate. Don't we have to give deference to that the petitioner, as I mentioned in my brief, that he's not a very good speaker, not a very good communicator. For example, when the government attorney asked him, did you give the earring that you gave to your fiancée? What kind of earring? He said, earring. Is it gold? No. Was it jade? No. Nothing else. So he's not man of the gap. So when he, when the judge found that he was not credible, because of the tone, just like the court just mentioned, the tone in his email doesn't reflect the real situation that he was in danger in China. But he already qualified that. He told the judge on two occasions, he purposely make it nice, make the email nice to his fiancée so she will not worry and will not get scared. So that is the reason. And he forgot about the trip, which is only a few days, like within one week from Wednesday to Wednesday, he has to report to the police on both Wednesdays. So he went to visit his grandparents only for a few days, and that was seven years ago before the hearing. So he just temporarily skipped his mind. It was not that important in his mind, but he did tell the judge he went to Beijing, he went to Shanghai, but forgot about that incident. Tell us what you think the IJ should have done with the documentary evidence. All right, Your Honor. The judge faulted the petitioner for not authenticating those documents. And his hospital examination of the injury caused by the police, his mother's letter, house church member, Mr. Hu's letter testifying about his arrest in China. And so these are the documentary evidence. The judge said they are not reliable because they were not authenticated. There's a case law called Bonelos versus the INS knife striker case. It says, persecutors are hardly likely to provide the victims with documents attesting to the acts of persecution. It is impractical for the petitioner to go to China and to authenticate the police fine receipt. That piece of document is the most important document. The government attorney has no objection to this being admitted into evidence. The mother's letter doesn't need to be authenticated because it's not a public record. Could the IJ properly take into account that having found Mr. Jiang not to be credible, that given that he had nothing else other than Mr. Jiang's testimony to authenticate the documents, that therefore his suspicions tended to those and there was some other basis because he didn't petitioner. Why would that be wrong in your view? The judge cannot totally disregard those documents. Well, did he disregard Mr. Jiang or did he discount, did he say they don't rehabilitate his credibility? So with respect to the hospital document, even putting us on foundational issues because I take it the government didn't object to its admission. All it shows is that he went the hospital, right? It doesn't show why it doesn't show who. Okay. And with respect to the fine, it just shows that he paid a fine. It doesn't show for what does it? Oh, it does say it does for illegal house church meeting. Is that right? Because I can't wait. Is the translation in the record? Let me, let me see what page is that. If it is, I can find it. If it is, I didn't, I didn't know that the translation of the reason was in the record. Oh yes. The page 1,270, 1,270. Okay. Stating the reason for illegal meetings, church meetings. Okay. Now with respect to the mother's and friends letter, right? Is the argument slightly different? I mean, as to those, they come from people associated with him who have a, an incentive to help him get asylum. Uh, as to those, could the IJ say, well, these people can't be cross-examined and they're obviously supporters of your, your claim. So I can't give much weight to, to these as rehabilitative matters. These kinds of witnesses, they are from out of the country and naturally they cannot be subject to cross-examination. So if the government attorney, again, I mentioned, if the government attorney have no objection to introducing to evidence, the judge should give proper weight. Well, but that's what I'm saying. Is it, isn't it a proper weighing to look at these and say, well, they're in evidence, but they're not subject to cross-examination and they come from your mother and your friend. And because I found you not credible for good reasons, let's just assume they don't tilt the needle very much in the other direction because of the obvious incentive of these people to help your case. Of course, your honor, if the respondent was not, if the petitioner was found not credible, those documents asked to rehabilitate because that's the best effort the petitioner can do to ask his family, ask his church members to write letters in support of him. On the other hand, if he did not ask his mother to write a letter, if he did not ask the church member to write a letter, the judge would simply say that it's not your testimony was not supported by evidence from people who knows your situation. So I think that's the best he can do. And the court should not totally ignore it or give him a little weight, especially again, in light of the government did not object to enter into evidence and they will probably enter into evidence after all. The immigration judge also felt that that your client was very nervous when he was confronted with the parts where he had little evidence about it. Did they use that or did they have to have something that was written? In other words, can they use his conduct as a witness? Yes, your honor, demeanor is a factor to be considered. But for a person, a foreigner sitting in an American court, not familiar with system, not familiar with the language. And when the judge pointed out, hey, you missed the part that you went to, you left town to a different town. He got confused. That's why his demeanor only showed that he was slow to respond. He was thinking and his recollection came back and told the judge, oh yes, judge, I misspoke earlier. I did go to visit my grandparents because I figured if I left the country, I would not be able to come back for a long, long time. So he just left the memory and it is six years ago, this incident. So yes, I believe the judge has the power to observe demeanor, but the petitioner, I'm sorry, I keep responding because the immigration court is the respondent, the federal court is the petitioner. The petitioner, yes, he was nervous. Yes, he was slow, but he answered the question correctly by remembering the incident. And besides, that incident is not central. It's not even germane to his asylum application. In fact, in the whole proceeding in the immigration court, nobody questioned him, anything about the church event, the police arrest, everything is centered on he forgot he went to visit his grandparents for a few days. Mr. Chiang, we've taken you over time. I'll give you a minute for rebuttal because you went over time because of our questions and we'll hear from the government. Good morning. May it please the court, Matthew Spurlock on behalf of the United States. In this case, substantial evidence clearly supports the agency's finding that the petitioner in this case was not credible. First, let me go first to the issue of demeanor since that's where we left off. On the issue of demeanor, the immigration judge specifically found in his decision that it appeared as though the petitioner was searching for an answer as he was having difficulty answering that question about why he didn't mention this trip to the northeast of China in between the days he was supposedly having to meet with the Chinese authorities. And I think that's an important part of the immigration judge's decision because you have to first remember that the petitioner's primary story about what happened when he was supposedly detained by Chinese authorities was that when he finally was let go, he was traumatized. He was in a bad way. He felt horrible and he wasn't doing well is essentially what he testified to. But the inconsistency is that his behavior that you see in the emails between the petitioner and his alleged fiancee is that he seemed to be doing pretty well to be able to get on a plane supposedly and fly to the other side of China in between his supposed dates when he was supposed to report to the Chinese authorities who were still oppressing him and still putting him through a bad time because of his Christian beliefs as he testified to. Mr. Spurlock, can I ask you to focus on the receipt from the police for the fine? Yes, your honor. And it's in AR 1227. Yes, your honor. Now, I'm looking at it and let's assume for a moment it's foundationally appropriate that it gets into evidence. Does it tell me what it only tells me he was fined for an illegal gathering, doesn't it? That's correct, your honor. It doesn't say anything about his Christian practices or meeting at a meeting at a church, a house church or anything along those lines at all. And was there any was there any testimony at trial that the that the original version was should have translated differently? I think yes, that's correct, your honor. The first time through when there was an adverse credibility decision, there was a little bit more scrutiny of the documents that were produced that were supposedly basically authenticated by the Chinese authorities. And I think that was one of the issues was whether it was translated correctly or not. But that was that was more of an issue during the first adverse credibility determination. I'm interested and it may not be terribly important in this case because the hospital record doesn't show why he went to the hospital. And this fine record isn't it's supportive, but it doesn't necessarily demonstrate that he was at a church gathering. But can you discount documents for which there's appropriate foundation simply because they were produced by the petitioner? I understand the letters. I understand what the letter from the mother and the and the and the fellow church goer that if they're produced at his behest and they're not subject to cross examination, you might not give them as much weight as if they were there. But with respect to documents which have appropriate foundation, don't they get whatever weight they're entitled to? Well, I think I think that's the question is what what weight are they entitled to? When the only the only evidence you have that this document was actually produced by the authorities in China is the testimony of the petitioner. That's it. That's the only access that you have to to be able to tell that that's exactly what these documents purport to be. And I think that that's an appropriate issue for the immigration judge to consider in the overall determination. Are these documents that the immigration judge should just ignore because they don't meet the criteria as a certain sort of criteria for admission into the record? I don't think that's what the agency did here. I think they considered that, yes, these are documents that purport to be what the what the petitioner is claiming them to be. But given the petitioner's credibility issues, I don't think that the immigration judge is obligated to give them full faith and credit just because and also just because the government didn't object to them. They're entered into the into the record. And for the very reason that the immigration judge is supposed to evaluate them in in consideration of the totality of the other evidence that's been presented. So let me let me let me ask you a hypothetical. So let's assume that this fine document said reason for charge, Christian worship. Would it then demonstrate past persecution? He'd been fined whatever amount of money this is for going to a church. I think that would I think that would be a factor for the for the immigration judge to consider, certainly that that it would be more accurate and more illuminating to what the petitioner is trying to argue. OK, so let me let me refine let me refine my hypothetical a little because I've given you an escape route and I don't want to. Let's assume that a a a a a the Chinese prime minister came and testified at this hearing and said, yes, he was fined four thousand dollars or four thousand, whatever it is, for attending a Christian worship service. No other evidence of beating, et cetera. Enough to establish persecution? Well, that the the prime minister testifying would certainly certainly have an effect on that. I believe it were a stipulated fact that he was he was fined four thousand dollars for attending a Christian worship service. Would that be persecution? Well, I think it depends on we don't we don't know what we don't. It doesn't say anything about whether he was incarcerated, whether he was mistreated or justified. You're fighting the hypothetical. My question is, what if the only evidence stipulated is I went to Christian worship service. When I came out, I was fined four thousand. I'm calling it dollars. It's not dollars. So he was hit with a monetary penalty for going to church. Is that persecution? I don't know that I would I would say that just being fined for attending a religious event or something like that would necessarily be the the admitted the the entire administrative process to kind of come up with that answer. I would I would concede that I give up. You're not going to you're not going to bite. So I go on with the rest of your argument. I think if I if I just would focus in on the fact that the petitioner was given an opportunity to explain the the discrepancies in his testimony and the emails between his his fiance and and as he's arguing now that, well, he just wasn't a very good communicator. And that's why he had that difficult to answer the question. But there's no evidence in the record that he had difficulty communicating any other messages. And there's also evidence in the record that he's a very highly educated individual who's been a tutor and made money being a tutor in China. So the idea that he's not sophisticated enough to answer questions is not supported by the record. I have a question. How does this issuance of a K-1 visa come to the U.S. to get married? How does that fit into this? Is it are you saying that was fraudulent or doesn't fit in at all with the with the main charge here? Yes, that's a very good question. The the initial case where he was found not credible, that was central to the issue. The immigration judge the first time around found that the fact that there wasn't sufficient evidence indicating that this marriage was bona fide was the basis for the adverse credibility finding that was sent back by the board for remand so that it would give the petitioner an opportunity to help bolster that evidence that his engagement with his fiance and the obtaining of that obtaining that visa. That was the reason why the the the emails from the the fiance were produced was to show to show that there was an actual relationship there. So it was in in reading those emails that's where the immigration judge discovered these pretty crucial and you know discrepancies between the petitioner's overall theme and testimony and what he was actually emailing with the supposed fiance at the same time he was supposedly being mistreated for the practice of his his religion. So I don't think they're central to this case because the immigration judge of the board has focused in on specific clear inconsistencies that petitioner was not able to explain and and didn't and showed poor demeanor in trying to explain them and that's what they based their adverse credibility decision on in this case and we would argue that that's supported by the record and petitioner has not presented any evidence that compels a different conclusion to that. Mr. Spurlock, you've gone over a little bit I want to make sure neither of my colleagues has a question for you. Thank you. If not, thank you and Mr. Keong will give you a minute for rebuttal. Yes, thank you your honor. The Chinese country condition report by the state department about China says Chinese constitution guarantees religious freedom so if the police find the petitioner for illegal gathering I'm sure they cannot put down for religious gathering otherwise if they put down for religious gathering it will be against the constitution so the illegal gathering the reason for the illegal gathering can only be solicited from the legally gathering it was because of his house church meetings and this is corroborated by the mother's letter by the church member the house church member Mr. Hu's letter and his own testimony and by the by the by the police report finding him for illegal gathering that is the Christian gathering now the judge the court asked whether a fine four thousand dollars or RMB is sufficient for uh for funding of persecution no it's not sufficient only if it's coupled with a total forbiddance to practice his religion then it is persecution that's the matter of the court guo that's only a couple of years ago by the national circuit in the petitioner's testimony he said it was totally forbidden to practice his religion so that will constitute persecution Mr. Kang thank you and thank you for answering the question that I asked appreciate it let me see if any of my colleagues have more questions for you if not with thanks to both council this case will be submitted thank you very much
judges: Siler, Hurwitz, Collins